1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NANCY EASTHAM, Individually and as
Personal Representative of the Estate of
JOHN EASTHAM, deceased,

                              Plaintiffs,

v.

RAY SPRICKMAN, et ux., et al.,

                              Defendants.

No.  C05-141Z

ORDER

This matter comes before the Court on Defendants' motion for partial summary

judgment as to Plaintiff's unseaworthiness claim, docket no. 24.  Having reviewed

Defendants' motion, Plaintiff's opposition, docket no. 31, Defendants' reply, docket no. 35,

the supplemental briefing requested by the Court, docket nos. 42, 44, 45, and all declarations

and exhibits in support thereof, the Court enters the following Order.

## BACKGROUND

Plaintiff Nancy Eastham is the personal representative of the estate of John Eastham

("Eastham"), recently deceased.  Substitution of Real Party in Interest, docket no. 30.

Plaintiff alleges that Eastham was attempting to board the vessel TIME OUT when he fell

from the steps provided by Defendants and received "multiple, severe, traumatic, permanent

ORDER  1–

and disabling injuries." Amend. Compl., docket no. 11, at ¶¶ 3.2-3.4.  Plaintiff brings claims

against the following individuals and entities: (1) the vessel TIME OUT; (2) Sprickman

Enterprises LLC, which owns the TIME OUT; (3) Ray and Constantine Sprickman, who are

the principal members/managers of Sprickman Enterprises LLC; (4) EBYC, Incorporated

("EBYC"), which leased the TIME OUT from Sprickman Enterprises LLC and, in turn, re-

leased the boat to Eastham; (5) Finn Knutsen, who managed EBYC and provided Eastham

with use and safety instructions for the TIME OUT; and (6) Elliot Bay Marina, Incorporated

("EBM"), where the TIME OUT was docked when Eastham fell.  Id. at ¶¶ 2.1-2.7.

At the time of the fall, Eastham had entered into a lease agreement with EBYC,

granting him unsupervised use of the TIME OUT for 21 days per year.  Spivak Decl., docket

no. 25, Ex. A at 3.  Eastham had boarded the TIME OUT using the allegedly defective steps

on two occasions previous to his fall of August 6, 2004.  Second Spivak Decl., docket no. 36,

Ex. C at 21-22.  Plaintiff alleges that the portable steps were designed and constructed by the

Sprickmans and that the fall was caused by negligence and/or unseaworthiness of the vessel

and appurtenances.   Amend. Compl., at ¶ 3.5.

Defendants request summary judgment dismissal of Plaintiff's unseaworthiness claim.

First, in their opening brief, Defendants made a rather narrow argument that the

unseaworthiness claim fails because Plaintiff does not allege, and cannot show, that Eastham

was a "seaman" and, therefore, was not owed a duty of seaworthiness.  In her response,

Plaintiff did not dispute Defendants' contention that Eastham was not a seaman but argued

that a warranty of seaworthiness arose because Eastham was a "charterer" of the TIME

OUT.  In reply, Defendants argued that there was no warranty of seaworthiness to Eastham

as a charterer because he was a sub-lessee of the TIME OUT without privity to Sprickman

Enterprises LLC.  However, Defendants also raised two additional arguments for the first

time in their reply brief: even assuming one or more defendants owed a duty of

ORDER  2–

seaworthiness to Eastham, Plaintiff's claim fails because (1) Eastham waived it by repeatedly using the stairs, and (2) the primary duty doctrine bars Plaintiff from recovering.

Based on the two arguments raised for the first time in reply, and other undeveloped issues, the Court requested additional briefing. Docket no. 41. The Court has now received the additional briefing and the issues are ready for review. In addition, the Court has before it two motions to strike and a motion to supplement the briefing. First, Defendants move to strike as hearsay the unsworn expert report of Richard Gill ("Gill") offered by Plaintiff. Docket no. 44, at 1. An unsworn copy of Gill's expert report is attached to the declaration of Tom Montgomery. Docket no. 43. Second, Plaintiff filed a sur-reply arguing that the motion to strike should be denied and seeking to supplement the briefing with additional quotations from Eastham's deposition and argument. Docket no. 45. Plaintiff's sur-reply includes a declaration by Gill that authenticates his expert report. Additionally, the sur-reply provides several lengthy quotations from Eastham's deposition in an effort to put those quotations, which were cited by Defendants, into context. Finally, Defendants filed a sur-sur-reply seeking to strike the deposition quotations and argument in Plaintiff's sur-reply as untimely. Docket no. 47.

The Court DENIES Defendants' motion to strike the Gill expert report, docket no. 44. Plaintiff has submitted a sworn declaration. Docket no. 45. However, the Court notes that the Gill report is not necessary to the resolution of this motion for summary judgment. The Court GRANTS Plaintiff's motion to supplement the record with additional portions of Eastham's deposition, docket no. 45. Finally, the Court GRANTS IN PART and DENIES IN PART Defendants' sur-sur-reply motion to strike Plaintiff's sur-reply, docket no. 47. The Court strikes all additional argument improperly included in the sur-reply.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The

ORDER  3–

1   moving party bears the initial burden of demonstrating the absence of a genuine issue of

2   material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party

3   has met this burden, the opposing party must show that there is a genuine issue of fact for

4   trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The

5   opposing party must present significant and probative evidence to support its claim or

6   defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir.

7   1991).  For purposes of this motion, reasonable doubts as to the existence of material facts

8   are resolved against the moving parties and inferences are drawn in the light most favorable

9   to the opposing party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

10          **A.**      **Implied Warranty of Seaworthiness to Charterers**

11          Plaintiff contends that Eastham was owed a duty of seaworthiness as a charterer of the

12  TIME OUT.  A "charterer" is a person who becomes entitled to use the whole of a vessel

13  belonging to another.  Walker v. Braus, 995 F.2d 77, 80 (5th Cir. 1993).  There are two

14  essential types of charters: (1) voyage/time charters, and (2) demise/bareboat charters.

15  Under the voyage/time charter, the shipowner continues to manage and control the vessel,

16  but the charterer designates the ports of call and the cargo carried.  BLACK'S LAW

17  DICTIONARY 250-51 (8th ed. 1999).  In contrast, under the demise/bareboat charter, the

18  shipowner surrenders possession and control of the vessel to the charterer, who then

19  succeeds to many of the shipowner's rights and obligations.  Id. at 250.  As Plaintiff notes,

20  several cases and treatises state the general rule that an owner impliedly warrants that a

21  chartered vessel is seaworthy.  See, e.g., Moore v. Phillips Petroleum Co., 912 F.2d 789, 792

22  (5th Cir. 1990); Dant & Russell, Inc. v. Dillingham Tug & Barge Corp., 895 F.2d 507 (9th

23  Cir. 1989) (citing Uni-Petrol Gesellschaft Fur Mineraloel Produkte M.B.H. v. M/T Lotus

24  Maru, 615 F. Supp. 78, 81 (S.D.N.Y. 1985)); Keller v. United States, 557 F. Supp. 1218,

25  1227 (D.N.H. 1983); CHARLES M. DAVIS, MARITIME LAW DESKBOOK 324 (7th ed. 2005);

26  THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 650 (2d ed. 1994).

ORDER  4–

Defendants first argue that they did not warrant the seaworthiness of the TIME OUT because the cases cited by Plaintiff are not from the Ninth Circuit.  This argument has no merit.  The <u>Dant & Russell</u> case is from the Ninth Circuit and cites directly to cases adopting the warranty of seaworthiness as to charterers (<u>Uni-Petrol</u> and <u>Kerr-McGee Corp. v. Law</u>, 479 F.2d 61, 63 (4th Cir. 1973)).  895 F.2d at 510.  Second, Defendants argue that the cases cited by Plaintiff do not analyze claims by charterers for unseaworthiness.  Defendants are correct.  While the cases cited by Plaintiff (<u>Moore</u>, <u>Uni-Petrol</u>, and <u>Walker</u>) do state the rule that an owner is liable for a warranty of seaworthiness to a charterer, none of those cases apply the rule or provide any useful analysis.  However, the implied warranty of seaworthiness clearly exists as stated in both the cases and treatises, and the fact that the few cases cited by Plaintiff are not directly analogous does not provide Defendants with a basis for summary judgment.

In the alternative, Defendants rely on the principle that the seaworthiness warranty is based on privity of contract and attaches only to the owner of the vessel.  Thus, Defendants reason, no party other than Sprickman Enterprises LLC (the owner of the TIME OUT) could be liable under the warranty.  Because Eastham was a sub-lessee of the TIME OUT (through EBYC), Defendants contend that Plaintiff is foreclosed from enforcing a warranty of seaworthiness against Sprickman Enterprises LLC and has no warranty claim against any Defendant.

In <u>Dant & Russell</u>, the defendant (Pacific) was the owner of a vessel and entered into a demise charter with Hvide Marine, which then sub-chartered the vessel to plaintiff Dant & Russell to use for cargo shipping.  When the cargo was damaged, Dant & Russell settled a claim with Hvide Marie and then brought suit against Pacific on a warranty of seaworthiness theory.  The <u>Dant & Russell</u> Court held that Pacific could not be held liable under the warranty theory because "the owner and the voyage charter [Dant & Russell] are not in privity and the owner does not owe a duty to the voyage charterer."  895 F.2d at 510.  Thus,

ORDER  5–

1 the Ninth Circuit held that the privity requirement barred recovery on a warranty of

2 seaworthiness claim where the owner demise chartered the vessel to one party, who then

3 sub-chartered the vessel to the plaintiff.

4      Defendants argue that this case is analogous to <u>Dant & Russell</u>.  Defendants reason

5 that Sprickman Enterprises LLC chartered the TIME OUT to EBYC and then EBYC

6 chartered the TIME OUT to Eastham, just as Pacific chartered the vessel to Hvide Marine

7 and Hvide Marine chartered to Dant & Russell.  Defendants assume for purposes of this

8 analysis that the owner (Sprickman Enterprises LLC in this case) is the *only* party that may

9 be liable on the warranty of seaworthiness and, therefore, that Plaintiff's claim must fail

10 entirely because Eastham was not in privity with Sprickman Enterprises LLC.

11      While Plaintiff acknowledges that the privity requirement exists, Plaintiff argues that

12 Eastham was in privity with Sprickman Enterprises LLC because EBYC did not demise

13 charter the TIME OUT from Sprickman Enterprises LLC (as Pacific did with Hvide Marine)

14 but, rather, EBYC was simply an agent of Sprickman Enterprises LLC.  First, Plaintiff relies

15 on the fact that the original charterer in <u>Dant & Russell</u> (Hvide Marine) took a demise charter

16 from the owner (Pacific).  Plaintiff asserts that privity is broken *only* if the original charterer

17 takes a demise charter rather than a time charter.  Plaintiff looks to the YachtLease

18 Management Agreement ("YMA") between Sprickman Enterprises LLC and EBYC and

19 notes that the YMA has several provisions that are not indicative of a demise charter.  The

20 YMA provides:

21      Owner may choose to remain substantially involved with the vessel and may
     choose to contract back to EBYC an amount equal to 30% of his/her monthly
22      lease rate of the vessel for specific services.

23      Owner will keep vessel at present moorage.

24      Owner will insure the hull and machinery of the vessel and provide $1,000,000
     minimum liability insurance for the owner, EBYC, and the yacht for the duration
25      of this Agreement.

26      Owner agrees to maintain the vessel in keeping with best marine practices.

ORDER   6–

1 Montgomery Decl., docket no. 33, Ex A (YMA at §§ IV(a)-(e)).

2      Plaintiff is correct that the YMA between Sprickman Enterprises LLC and EBYC is

3 not clearly indicative of either a demise charter or a time charter.  Plaintiff is also correct that

4 it is not clear whether the <u>Dant & Russell</u> Court was relying on the fact that Pacific demise

5 chartered the vessel to Hvide Marine.  Because a demise charter generally transfers the rights

6 and obligations of ownership to the charterer, the <u>Dant & Russell</u> Court could have relied on

7 the fact that Pacific transferred all warranty obligations to Hvide Marine.  In contrast, if the

8 charter here was only a time charter, Sprickman LLC and the Sprickmans may retain

9 obligations to parties who later reached agreements with EBYC to lease the TIME OUT.

10 Finally, Plaintiff is correct that there remains a factual issue as to the question of whether

11 EBYC was acting as an agent for Sprickman Enterprises LLC.  Accordingly, the Court

12 GRANTS IN PART and DENIES IN PART Defendants' motion for partial summary

13 judgment as to the warranty of seaworthiness claim.  The Court GRANTS the motion for

14 partial summary judgment as to Finn Knutsen, and EBM, as Plaintiff could not have been in

15 privity of contract with these Defendants.  The Court DENIES the motion for partial

16 summary judgment as to Sprickman Enterprises LLC, Ray and Constantine Sprickman,

17 EBYC, and the TIME OUT.[1]

18      **B.     <u>Waiver</u>**

19      Defendants have raised "waiver" as a defense to the unseaworthiness claim.  Docket

20 no. 35 at 3-4.  Defendants rely on <u>Dant & Russell</u>, which states that a warranty of

21 seaworthiness claim is waived "'where full inspection was made by those seeking to charter

22 the vessel[] . . . and the alleged defects or weaknesses were either patent or were especially

23 called to such charterers' attention by the vessel owners.'"  895 F.2d at 510 (quoting <u>Thomas</u>

24 ───────────────

25 [1] As Plaintiff notes, the YMA identifies both Sprickman Enterprises and Ray and Constantine
Sprickman individually as owners of the TIME OUT.  Montgomery Decl., Ex. A.  Thus,
26 there is a question of fact as to whether Eastham was in privity with Defendants Ray &
Constantine Sprickman.

ORDER  7–

1   <u>Jordan, Inc. v. Mayronne Drilling Mud, Chem. & Eng'g Serv.</u>, 214 F.2d 410, 413 (5th Cir.

2   1954)).  <u>See also</u> <u>Nat G. Harrison Overseas Corp. v. American Tug Titan</u>, 516 F.2d 89, 96

3   (5th Cir. 1975) (no waiver where unseaworthy conditions were not discoverable by

4   reasonable inspection prior to charter).  In <u>Dant & Russell</u>, the charterer had specific

5   knowledge that the vessel leaked water into the cargo area and knew that the pump system

6   did not work properly.  <u>Id.</u> at 509.  The charterer also took an active part in the repairs and

7   agreed to delay some of the repairs until after the damage occurred.  <u>Id.</u> at 509-10.  The <u>Dant</u>

8   <u>& Russell</u> Court held that the charterer's knowledge of the defects and conduct in taking on

9   cargo that was later damaged by water constituted a waiver.  <u>Id.</u> at 510.

10          Defendants contend that Eastham's prior use and perception of the allegedly defective

11   stairs establish, as a matter of law, that he waived any unseaworthiness claim just as did the

12   charterer in <u>Dant & Russell</u>.  First, Eastham acknowledged using the steps at least twice

13   before the accident.  Second Spivak Decl., docket no. 33, Ex C (Eastham Dep. at 21-22, 27).

14   Defendants also provide the "Vessel Acceptance Forms" that were signed by Eastham prior

15   to taking control of the TIME OUT on July 23, 2004, and August 6, 2004.  <u>Id.</u> at Exs. A and

16   B.  Second, Eastham described his perception of the steps in the following colloquy with

17   counsel:

18          Q: Now, on the TIME OUT steps, when you first looked at the vessels and you
            were trying to decide which one you would use for the YachtLease program, at
19          that time was there anything about the steps next to the TIME OUT that caused
            you any concern or that you saw presented any risk of using them?
20
            A: I thought it was kind of jury-rigged, yes.  I've never seen wood steps before.
21
            Q: Other than the fact that they were wood, what about the steps caused you
22          concern?

23          A: They were somewhat shaky, but I didn't – it wasn't in the consideration range.
            The consideration range was is the boat seaworthy.
24

25   <u>Id.</u> (Eastham Dep. at 69).

26

ORDER   8–

1    Plaintiff contends that several factual questions remain in dispute as to Defendants'

2  waiver defense.  For example, the parties disagree as to what (if anything) the defect was that

3  caused the stairs to fail, whether Eastham was aware of *that* particular defect, and whether he

4  made a "full inspection" of the stairs prior to the incident.  Moreover, as an affirmative

5  defense, Defendants bear the burden of establishing that Eastham waived the

6  unseaworthiness claim.  The record before the Court, including the deposition excerpts and

7  Vessel Acceptance Forms, is insufficient to resolve these questions in Defendants' favor as a

8  matter of law.   Accordingly, the Court concludes that there remain material issues of fact

9  and DENIES Defendants' motion for partial summary judgment as to their waiver defense.

10          **C.    <u>Primary Duty Doctrine</u>**

11    Defendants maintain that the primary duty doctrine bars Plaintiff from recovering on

12  her unseaworthiness and negligence claims.  The primary duty doctrine relieves an employer

13  of liability to a seaman when the following conditions are satisfied: (1) the seaman

14  consciously assumed a duty as a term of employment; (2) the dangerous condition that

15  injured the seaman was created by the seaman or could have been controlled or eliminated

16  solely by the seaman in the proper exercise of his duties; and (3) the seaman knowingly

17  violated a duty consciously assumed as a condition of employment.  <u>Northern Queen, Inc. v.</u>

18  <u>Kinnear</u>, 298 F.3d 1090, 1096 (2002) (quoting <u>Moore v. The Sally J.</u>, 27 F. Supp. 2d 1255,

19  1262-63 (W.D. Wash. 1998)).  "The primary duty rule 'does not apply to a momentary lapse

20  of care by an otherwise careful seaman.'"  <u>Id.</u> at 1098.  "[T]he plaintiff must have breached

21  some *positive* duty for the rule to apply, for mere contributory negligence is *not* a bar to

22  recovery."  <u>California Home Brands, Inc. v. Ferreira</u>, 871 F.2d 830, 836 (9th Cir. 1989)

23  (emphasis in original).

24

25

26

1    The cases that have applied this rule have done so only with regard to seamen

2    working as employees.[2]  Defendants argue that the doctrine applies to Eastham by analogy

3    because he became the captain of the TIME OUT under the YachtLease Agreement.  In

4    response, Plaintiff implicitly acknowledges that the doctrine applies, offering no argument

5    that it is limited only to seamen and/or employees.  Thus, the issue is whether there are

6    disputed issues of material fact as to whether Defendants can demonstrate that the three

7    elements described in Northern Queen are present in this case.

**1.        Whether Eastham Consciously Assumed a Duty**

9    Defendants argue that, as captain of the TIME OUT, Eastham had a general duty to

10   maintain the safety and welfare of the crew, which includes Eastham himself.  In Northern

11   Queen, the Court stated that a captain's "duty to operate the vessel in a safe manner [is] a

12   specific duty that [is] unique to the job of captain."  298 F.3d at 1096.  Plaintiff offers no

13   opposition to the argument that Eastham had a duty to maintain the safety and welfare of the

14   crew.  Defendants have established this element as a matter of law.

**2.        Whether the Dangerous Condition Could Have Been Controlled or
            Eliminated Solely by Eastham**

17   Defendants contend that the dangerous condition (which they deny existed) could

18   have been controlled or eliminated solely by Eastham.  Defendants rely on the fact that

19   Eastham boarded the TIME OUT on two occasions prior to the fall and believed the stairs

20   were "jury-rigged" and "somewhat shaky."  Second Spivak Decl. at Ex C (Eastham Dep. at

21   69).  Because Eastham did not report his concerns to the Defendants prior to the fall,

22   Defendants suggest that no one other that Eastham could have remedied the alleged defect

23   that caused the stairs to tip from under him.  Defendants also suggest that this case is

24   analogous to Reinhart v. United States, 457 F.2d 151 (9th Cir. 1972).

26   [2]As described in Defendants' original motion for summary judgment, there is no basis to
conclude that Eastham was a "seaman" for purposes of this case.

ORDER   10–

1    In <u>Reinhart</u>, one of the Chief Mate's duties was to periodically inspect wood

2   sheathing that was installed as a floor surface in the hold of the vessel.  457 F.2d at 152.

3   During the inspections, the Chief Mate became aware that the wood was broken and

4   damaged.  <u>Id.</u>  Despite his positive duty to do so, the <u>Reinhart</u> Court found that the Chief

5   Mate "made no effort to see that the area was safe for the limited purposes for which it was

6   to be used during the return voyage."  <u>Id.</u> at 154.  Then, after five or six trips into the hold

7   without incident, the Chief Mate fell through a damaged portion of the floor and sustained

8   injuries.  <u>Id.</u> at 152.  The Court held that the Chief Mate's unseaworthiness claim against his

9   employer was barred as a result of his failure to act.  <u>Id.</u> at 154.

10    Plaintiff's response to Defendants' argument is difficult to decipher.  First, Plaintiff

11   provides what appears to be a lengthy paraphrase of <u>Bernard v. Maersk Lines, Ltd.</u>, 22 F.3d

12   903 (9th Cir. 1994), citing and describing many of the same cases as <u>Bernard</u> without

13   explaining the relevance of those cases to any element of the primary duty doctrine.  <u>See</u>

14   Pl.'s Supp. Resp., docket no. 42, at 5-7.  Next, Plaintiff argues that "there is no basis upon

15   which to state that Mr. Eastham had knowledge of a dangerous condition . . . or that he

16   created it or was in the sole position to control or eliminate it."  <u>Id.</u> at 8.  Plaintiff suggests

17   that Eastham was not solely in control of the stairs because they were built by the

18   Sprickmans and/or Sprickman Enterprises LLC and provided by EBYC.

19    Although the argument is less than clear, Plaintiff is correct that there is a question of

20   fact as to which parties had control over the stairs.  While Defendants argue that control was

21   solely in Eastham's hands because Eastham stated he was concerned about the stairs,

22   Plaintiff argues that Defendants knew or should have known the stairs were unsafe because

23   one or more of the Defendants built and provided the stairs.  Additionally, Eastham is not

24   analogous to the Chief Mate in <u>Reinhart</u>, who was specifically and solely responsible for

25   checking the wood sheathing for damage and ensuring it was repaired.  Defendants have not

26   established that Eastham maintained sole control over the stairs as a matter of law.

ORDER  11–

### 3. Whether Eastham Knowingly Violated a Duty Assumed as Captain

Defendants contend that Eastham violated his duty to care for his own safety by choosing to use steps he considered to be "jury-rigged" and "somewhat shaky." However, Eastham's actions in this case are not analogous to cases where courts have dismissed a plaintiff's claim under the primary duty doctrine. For example, the Chief Mate in Reinhart knew that the wood sheathing was broken and damaged when the vessel left port without having repaired the damage. Similarly, in Northern Queen, Kinnear, the captain of the vessel, had a general duty to operate the vessel in a safe manner. 298 F.3d at 1096. Kinnear knowingly steered the vessel into bad whether and ignored a bilge alarm, which ultimately led to the capsizing of the vessel. Id. at 1096-97. Eastham's generalized statements about the stairs being "jury-rigged" and "somewhat shaky" do not rise to the same level of awareness as was the case in Reinhart and Northern Queen. As Plaintiff notes, "jury-rigged" simply means "rigged for temporary service." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1227 (3d ed. 1981). The Court concludes that the Defendants have not established as a matter of law that Eastham knowingly violated a duty he assumed as Captain of the TIME OUT.

### 4. Issues of Fact Remain as to Defendants' Motion for Summary Judgment as to Primary Duty Doctrine Defense

There is no dispute that Eastham maintained a duty to care for the safety and welfare of the crew of the TIME OUT as captain. However, there remain material issues of fact as to whether Defendants can demonstrate that the dangerous condition, if it existed, could have been eliminated or controlled solely by Eastham and whether Eastham knowingly violated a duty to care for his own safety. Accordingly, Defendants' motion for partial summary judgment as to their primary duty doctrine defense is DENIED.

## CONCLUSION

Defendants motion for partial summary judgment as to the warranty of seaworthiness claim, docket no. 24, is GRANTED IN PART and DENIED IN PART. The Court concludes

ORDER   12–

that there remain genuine issues of material fact as to the warranty of seaworthiness claim against Defendants Sprickman Enterprises LLC, Ray and Constantine Sprickman, and EBYC, Incorporated, and the TIME OUT.  The motion for partial summary judgment is DENIED as to these Defendants.  The motion for partial summary judgment is GRANTED as to Finn Knutsen and Elliot Bay Marina, Incorporated.

Additionally, the Court DENIES Defendants' motion to strike the Gill report, docket no. 44, GRANTS Plaintiff's motion to supplement the record, docket no. 45, and GRANTS IN PART and DENIES IN PART Defendants motion to strike Plaintiff's sur-reply, docket no. 47.

IT IS SO ORDERED.

DATED this 30th day of March, 2006.

Thomas S. Zilly
United States District Judge

ORDER   13–